FILED
U.S. District Court
District of Kansas
08/19/2026
Clerk, U.S. District Court
By: SND Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**JOE LOUIS STEWART, JR.,**

**Petitioner,**

**v.** **CASE NO. 26-3157-JWL**

**TOMMY WILLIAMS,**

**Respondent.**

**MEMORANDUM AND ORDER**

This matter is a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed on May 29, 2026 by Petitioner and Kansas state prisoner Joe Louis Stewart, Jr. On July 23, 2026, the Court issued a memorandum and order to show cause ("MOSC") explaining that it appeared that the statute of limitations expired 9 days before Petitioner filed his petition, meaning the petition was untimely filed. (Doc. 7, p. 2-5.) The MOSC explained the circumstances in which equitable tolling of the statute of limitations might be available and those in which a petitioner might avoid the statute of limitations by making a colorable claim of actual innocence. *Id.* at 5-7. Petitioner was granted time to show cause why this case should not be dismissed as untimely filed. *Id.* at 7.

This matter comes now before the Court on Petitioner's response to the MOSC, which he timely filed on August 18, 2026. (Doc. 8.) Petitioner attaches to the response: (1) letters he received from counsel who represented him in state-court proceedings, including one letter declining to provide Petitioner with certain documents that the court had not authorized counsel to release; (2) affidavits related to Petitioner's request for recusal of the state district judge presiding over his K.S.A. 60-1507 proceedings; (3) the transcript of Petitioner's preliminary hearing; and (4)

arguments on the merits of Petitioner's claims for relief. (Doc. 8-1, p. 1-68.)

As explained in the MOSC, the Court liberally construes pro se filings. (Doc. 7, p. 2 (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).) But it does not assume the role of Petitioner's advocate and it will not construct arguments for him. *See id.* (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

Even liberally construed, Petitioner's response to the MOSC does not dispute the Court's conclusion that the federal habeas statute of limitations expired before he filed his petition in this Court. (Doc. 8.) To his credit, Petitioner acknowledges that he misunderstood the application of the statute of limitations. *Id.* at 1. The Court therefore proceeds to whether Petitioner has shown that the statute of limitations should be equitably tolled or that he should be allowed through the actual innocence gateway.

**Equitable Tolling**

The MOSC explained:

> [T]he federal habeas one-year limitation period is subject to equitable tolling "in rare and exceptional circumstances." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (citation omitted). Equitable tolling is available only "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 12[1]7, 1220 (10th Cir. 2000). Circumstances that warrant equitable tolling include, "for example, when a prisoner is actually innocent, when an adversary's conduct—or other uncontrollable circumstances—prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a deficient pleading during the statutory period." *Gibson*, 232 F.3d at 808 (internal citations omitted).

(Doc. 7, p. 5.)

The Court appreciates the difficulties faced by individuals who navigate the legal system pro se. But to the extent that Petitioner's response to the MOSC could be liberally construed to assert that the statute of limitations should be equitably tolled due to his lack of knowledge or legal

training, it cannot succeed. "[I]gnorance of the law is not a valid excuse for failing to satisfy procedural requirements." *Valenzuela v. Silversmith*, 699 F.3d 1199, 1207 (10th Cir. 2012) (citing *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000)). "It is well-established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). In short, proceeding pro se is not the type of extraordinary circumstance that justifies equitable tolling. *See id*. Even liberally construed, nothing in Petitioner's response shows extraordinary circumstances under which equitable tolling would be appropriate.

**Actual Innocence**

The MOSC explained:

> [A]n exception to the one-year time limitation exists where a petitioner adequately asserts his actual innocence. "[A]ctual innocence 'serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations.'" *Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)). In order to pass through the actual innocence gateway, Petitioner must provide this Court with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *See Schlup v. Delo*, 513 U.S. 298, 324 (1995). "An actual innocence claim must be based on more than the petitioner's speculations and conjectures." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021).
>
> To be clear, Petitioner is not required to conclusively exonerate himself in order to pass through the actual innocence gateway. But he must present the Court with new, reliable evidence—meaning reliable evidence that was not presented at his trial—and he must "demonstrate 'that more likely than not any reasonable juror would have reasonable doubt'" about his guilt in light of the new, reliable evidence. *See Fontenot*, 4 F.4th at 1030 (quoting *House v. Bell*, 547 U.S. 518, 538, 553 (2006)). "Actual innocence means 'factual innocence not mere legal insufficiency.'" *O'Bryant v. Oklahoma*, 568 Fed. Appx. 632, 637 (10th Cir. 2014) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Thus, arguments based on legal insufficiencies will not open the actual innocence gateway.
>
> In other words, the actual innocence gateway will open—meaning that this Court may consider the merits of Petitioner's grounds for federal habeas relief—only if Petitioner presents to this Court reliable evidence that was not presented at

> his trial and which, when considered with all of the other relevant evidence, makes it more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt of the crimes of which he was convicted. This is a high bar, in recognition of the Tenth Circuit's explanation that
>
> > tenable actual-innocence gateway pleas are rare, arising only in an extraordinary case. The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.
>
> *Fontenot*, 4 F.4th at 1031 (citations and quotation marks omitted).

(Doc. 7, p. 6-7.)

Although Petitioner does not expressly argue in his response that he should be allowed to pass through the actual innocence gateway, his presentation to this Court of his unsuccessful efforts to obtain certain documents from his attorney could be liberally construed as making the argument. Some additional information helps place this assertion into context.

Petitioner seeks federal habeas relief from his 2017 convictions of two counts of aggravated indecent liberties with a child; the charges were based on events that occurred in 2016. (*See* Doc. 1, p. 1); *See also State v. Stewart*, 2020 WL 1074710, *1-3 (Kan. Ct. App. Mar. 6, 2020) (unpublished) (*Stewart I*), *rev. denied* Sept. 25, 2020. Before trial, the State sought permission to admit evidence of a 2011 allegation that Petitioner had committed sexual misconduct against a different child. *Stewart I*, 2020 WL 1074710 at *2. Defense counsel then conducted an investigation into the allegation, which is referred to as "the Lawrence investigation." (*See* Doc. 1-1, p. 6.) The trial court ultimately allowed the State to introduce evidence of the 2011 allegation at trial. *Stewart I*, 2020 WL 1074710 at *2. Petitioner asserts that after the 2025 evidentiary hearing in his K.S.A. 60-1507 case, his attorney gave him a copy of a police report, apparently discovered through the Lawrence investigation, that showed the alleged 2011 victim had also alleged molestation by another adult. (Doc. 1, p. 5.)

In his response to the MOSC, Petitioner advises that he tried "to get a copy of the la[w]rence [i]nvestigation but was denied." (Doc. 8, p. 2.) To the response, he has attached a May 2024 letter from his counsel that states, in relevant part: "In regards to your request of the Lawrence investigation, it was my recollection the Court had not authorized me to release an actual copy of the same. We discussed the interviews that had been completed." (Doc. 8-1, p. 2.) Petitioner's response and this attachment could be liberally construed as an attempt to invoke the actual innocence gateway and overcome the bar resulting from his petition being untimely filed.

Assuming solely for the sake of argument that a police report exists detailing the 2011 victim's allegations against another individual, such evidence would likely be both new and reliable. Even so, the Court cannot conclude that it is not more likely than not that the evidence would have left "any reasonable juror" with reasonable doubt about Petitioner's guilt of the 2016 crimes with which he was charged. As noted above, the crimes of which Petitioner was convicted in 2017 occurred in 2016. The 2011 allegation was presented to the jury as propensity evidence only and the jury was instructed that it related to "'crimes of a sexual nature *other than the present sex crimes charged*'" and could "'be considered *solely* for the purpose of proving propensity of the defendant to commit other sex crimes.'" *Stewart I*, 2020 WL 1074710 at *6 (emphasis added).

Moreover, both children—and their mothers—testified at Petitioner's trial and were subject to cross-examination. *Id.* at *1-2. Petitioner also testified and "denied inappropriately touching either" child. *Id.* at *2. And it appears that the jury viewed a video of a forensic interview with the 2016 victim. *See Stewart v. State*, 2024 WL 3384998, * 3-4 (Kan. Ct. App. July 12, 2024) (unpublished), *rev. den.* May 20, 2025. The jury was able to determine the credibility of each witness, and Petitioner does not explain why or how impeachment of the alleged 2011 victim would have led to reasonable doubt that Petitioner committed the 2016 crimes.

In other words, even if the jury had been presented with information discovered during the Lawrence investigation that undermined the credibility of the alleged 2011 victim, it does not necessarily follow that the jury would have had reasonable doubt about Petitioner's guilt regarding the 2016 victim. *See Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014) ("[C]asting some doubt on witness credibility[] does not necessarily satisfy th[e] standard" for actual innocence gateway claims.); *Belcher v. Quick*, 2026 WL 2199120, *3 (10th Cir. July 30, 2026) (unpublished) (citing *Calderon v. Thompson*, 523 U.S. 538, 563 (1998), to support the statement that "evidence that only impeaches the credibility of incriminating witnesses is generally insufficient to support an actual innocence gateway claim").) Thus, Petitioner has not met the high bar required to pass through the actual innocence gateway and allow this Court to reach the merits of his untimely claims for federal habeas relief.

**Conclusion**

In summary, Petitioner does not dispute that his petition was untimely filed or that he is entitled to statutory tolling other than what was identified in the MOSC. Petitioner has failed to show that equitable tolling is warranted or that this Court should allow him to pass through the actual innocence gateway. Therefore, this case must be dismissed with prejudice as untimely filed. *See Haney v. Addison*, 175 F.3d 1217, 1219-21 (10th Cir. 1999) (affirming dismissal with prejudice of untimely 2254 petition); *Navarette v. Horton*, 2023 WL 1773856, *1 (10th Cir. 2023) (unpublished) (same).

**Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability (COA) upon entering a final adverse order. A COA may issue only if the petitioner made a substantial showing of the denial of a constitutional rights. 28 U.S.C.

§ 2253(c)(2).

> "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The failure to satisfy either prong requires the denial of a COA. *Id.* at 485. The Court concludes that the procedural ruling in this matter is not subject to debate among jurists of reason. Therefore, the Court declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED THAT** this matter is dismissed with prejudice as time-barred. No certificate of appealability will issue.

**IT IS SO ORDERED.**

DATED: This 19th day of August, 2026, at Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge